UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAULA DAVIS | CIVIL ACTION |
| VERSUS | NO. 13-6059 |
| CAROLYN W. COLVIN, COMMISSIONER<br>SOCIAL SECURITY ADMINISTRATION | SECTION "B" (3) |

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.  BACKGROUND

Plaintiff filed an application for DIB on March 28, 2011, alleging a disability onset date of March 23, 2011. (Adm. Rec. at 120). Plaintiff alleges disability due to major depression, bipolar disorder, anxiety, attention deficit disorder, and ankle pain. (*Id.* at 198). Plaintiff, born on November 7, 1973, was 37 years old on the date on which she alleged disability and 38 years old at the time of the final administrative decision. (*Id.* at 216). Plaintiff has completed four years of college. (*Id.* at 195). Plaintiff has past work experience as a secretary, a pet nutrition specialist, a

personal care attendant, a customer service worker, and a copy person/general clerk. (*Id.* at 22).

Defendant initially denied plaintiff's application on June 8, 2011. (*Id.* at 57-67). Plaintiff sought an administrative hearing, which defendant held on March 21, 2012. (*Id.* at 76-77, 29-55). Plaintiff and a vocational expert ("VE"), Ms. Jury, testified at the hearing.

On July 11, 2012, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 15-24). In the decision, the ALJ concluded that plaintiff has the severe impairments of depression, anxiety and personality disorder. (*Id.* at 17). The ALJ held that plaintiff did not have an impairment that meets or medically equals a listed impairment under the regulations. (*Id.* at 18). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with several non-exertional limitations. (*Id.* at 19). The ALJ held that plaintiff can only perform work-related tasks in an environment free of fast-paced production requirements and routine workplace changes, and with no more than occasional direct interaction with the public, co-workers and supervisors. (*Id.*). The ALJ concluded that plaintiff can not perform her past relevant work. (*Id.* at 22). The ALJ held that considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, namely, that of night janitor/housekeeper, packer, amd security guard. (*Id.* at 23). The ALJ thus denied plaintiff DIB. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. (*Id.* at 7-8). On August 2, 2013, the Appeals Council denied plaintiff's request. (*Id.* at 1-6). Plaintiff then timely filed this civil action.

2

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.

*Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work

5

history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are two issues on appeal:

(1) Whether substantial evidence supports the ALJ's RFC assessment.

(2) Whether the ALJ erred when she failed to assign controlling weight to plaintiff's treating physician.

## V. ANALYSIS

### 1. Whether substantial evidence supports the ALJ's RFC assessment.

As noted above, the ALJ found that plaintiff retained the RFC to perform a full range of work at all exertional levels but with several non-exertional limitations. (Adm. Rec. at 19). She concluded that plaintiff can only perform work-related tasks in an environment free of fast-paced production requirements and routine workplace changes, and with no more than occasional direct interaction with the public, co-workers and supervisors. (*Id.*). Plaintiff contends that this RFC determination is in error because the ALJ failed to take into account all of her medically-determinable impairments, severe and non-severe alike.

For the following reasons, the Court finds that the ALJ considered all of the medical evidence of record and that substantial evidence supports her conclusion that plaintiff retains the RFC to perform work at all exertional levels with the limitations outlined above. The ALJ reviewed a May 24, 2011 consultative mental status examination report completed by James Mours, Psy.D. (*Id.* at 20-21, 489-91). Mours noted that plaintiff showed normal judgment, normal insight, and

good long-term memory. (*Id.* at 21, 490). Plaintiff appeared only mildly depressed and demonstrated quick and sharp cognitive processes. (*Id.* at 21, 491). Mours opined that "if required to work full time, the claimant would have little difficulties in performing most mental tasks." (*Id.*). He further noted that plaintiff could adequately understand and follow written and verbal instructions, pay general attention, maintain sustained concentration, work at a standard pace, persist at her tasks, and interact with others in a socially appropriate manner. (*Id.*). Further, she "was attentive to the tasks requested of her," her "speech flow was normal," "her [s]peech content was logical and relevant," and she "had a good attitude and was cooperative in interacting with the evaluator." (*Id.* at 491). The ALJ properly determined that Mours' report did not support a disability finding. (*Id.* at 22). Moreover, it appears that the ALJ gave plaintiff the benefit of the doubt, as she assessed significantly greater limitations, such as only occasional interaction with others, than indicated by Mours' findings. (*Id.* at 21, 490-91). Indeed, Mours reported that plaintiff informed him that she "do[es] get along well with others and ha[s] friends." (*Id.* at 491).

The ALJ also reviewed treatment notes from plaintiff's treating physician, Andrew Calhoun, M.D. (*Id.* at 21-22). At an initial visit in August 2011, plaintiff reported feelings of sadness and anger and interpersonal problems with her son. (*Id.* at 21, 501). Calhoun noted dysphoric affect with no signs of psychosis. (*Id.* at 21, 501).

In September 2011, plaintiff told Calhoun that she experienced "very vivid psychotic events," including auditory and visual hallucinations. (*Id.* at 21, 500). (Earlier, plaintiff had denied visual and auditory hallucinations to Mours. (*Id.* at 490)) Calhoun noted in his report that plaintiff's statement was "all somewhat in contrast to her manner of relating which is a bit insistant [sic] but

7

well organized." (*Id.* at 500). Calhoun opined that plaintiff's reported symptoms "seem[ed] to have a volitional/fantasy aspect to them," and he "confronted [her] on these psychotic descriptions and encouraged [her] to focus more on the reality of her life and dealing with the stresses that occur in reality." (*Id.* at 21, 500). Calhoun concluded that plaintiff demonstrated no particular disorganization in her manner of relating despite her reports of psychotic symptoms. (*Id.* at 21, 500).

In December 2011, Calhoun reported no abnormalities in perception, mood, affect, or behavior. (*Id.* at 530). With regard to her speech, he noted only that it was rapid. (*Id.*). He stated that plaintiff showed normal orientation, normal memory, normal judgment, and normal insight. (*Id.* at 531). Further, self-abuse thoughts, suicidal thoughts, homicidal thoughts and delusions were absent. (*Id.*).

One month later, plaintiff reported that there was "still lots of drama in the family." (*Id.* at 21, 534). She related that she was sometimes "able to deal with these problems" but that she "sometimes sort of retreat[ed] to her bed. (*Id.*). Calhoun opined that plaintiff could "volitionally focus a bit more and shed her dysphoric affect." (*Id.*). He again found normal orientation, normal memory, normal judgment, and normal insight, and her behavior, mood, affect and perception were within normal limits. (*Id.* at 536-37).

At a final Session Information in February 2012, plaintiff reported to Calhoun that she had an altercation while shopping. (*Id.* at 540). Plaintiff stated that she "needs to 'act like a grown up,'" and Calhoun declined to increase the dosage of her Ritalin. (*Id.* at 21, 540). Plaintiff again demonstrated normal orientation, normal memory, normal judgment, and normal insight. (*Id.* at 543). And again, her behavior, mood, affect, and perception were within normal limits. (*Id.* at 542).

And for the first time, Calhoun reported that her speech was within normal limits. (*Id.*). In sum, the ALJ concluded – and this Court agrees – that Calhoun's treatment notes reveal minimal symptoms attributable to a mental impairment.

Plaintiff does not argue to the Court any additional limitations that the ALJ should have found based on her interpretation of the evidence, nor does she cite the Court to the evidence outlined above on which the ALJ relied. Instead, she contends that the ALJ failed to take into account her own uncorroborated subjective complaints, such as that her depression prevents her from bathing, changing clothes, cooking, cleaning, or taking her children to school. [Doc. #11-1 at p. 6]. The evidence of record, however, contradicts these contentions. Plaintiff reported to Mours that she can cook, shop, perform household chores, dress herself, bathe, and groom independently, and that she manages her own finances. (*Id.* at 491). On numerous occasions, however, Calhoun found plaintiff's appearance and dress to be normal. (*Id.* at 530, 536, 542). The ALJ was not obligated to simply credit plaintiff's subjective complaints without regard to medical evidence that directly contradicts her claims. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (holding that subjective complaints must be corroborated, at least in part, by objective evidence); *see* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 at *1 ("No symptom . . . can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms").

Plaintiff also argues that she is "unable to have much, if any, direct interaction" with others

because she missed three appointments at her part-time job as a pet nutrition specialist and because she got into an altercation while shopping. [Doc. #11-1 at p. 6]. However, this argument is moot because the ALJ took this into account when it limited her RFC assessment to only occasional interactions with others in the workplace. (*Id.* at 19). In addition, the evidence cited by plaintiff is not objective *medical* evidence necessary to corroborate her disabling complaints. *See Houston*, 895 F.2d at 1016.

Plaintiff maintains that a check-mark medical-source statement compiled by her attorney and sent to Calhoun in anticipation of the administrative hearing supports a more limited RFC. [Doc. #11-1 at p. 6]. However, the ALJ considered this evidence and cited numerous reasons to discount it. (Adm. Rec. at 21-22). On the check-mark form, Calhoun assessed "marked" limitation in almost every area of functioning, contrary to his treatment notes. (*Id.* at 557-59). For instance, the check-mark form assessed marked limitations in plaintiff's ability to use adequate judgment, (*id.* at 558), but his treatment notes consistently state that plaintiff had intact judgment. (*Id.* at 21, 531, 537, 543). The check-mark form assessed marked impairment in plaintiff's ability to behave predictably, (*id.* at 559), but Calhoun's treatment notes consistently indicate that plaintiff behaved normally. (*Id.* at 530, 536, 542). The check-mark form also assessed marked limitation in plaintiff's ability to maintain personal appearance, (*id.* at 559), but Calhoun's treatment notes consistently state that plaintiff's appearance was normal. (*Id.* at 530, 536, 542). In sum, Calhoun's treatment notes provide no support for the disabling limitations indicated on the check-mark form. In addition, the form is contradicted by Mours' assessment. (*Id.* at 22, 489-91). An ALJ may disregard a medical assessment when unsupported by the evidence. *Greenspan*, 38 F.3d at 237. The ALJ gave

significant weight to the clinical treatment notes of Calhoun and refused to assign controlling weight to the questionnaire. (*Id.* at 22). Given the substantial objective medical evidence and repeated consistency in Calhoun's clinical treatment notes, this was not error.

The ALJ also refused to assign controlling weight to the check-mark form because it is conclusory and contains no elaboration or references to the medical record. (*Id.* at 22, 557-60). As a result, it is impossible for the Court – or the ALJ, for that matter – to discern how he arrived at the unsupported limitations. Courts have routinely held that forms unaccompanied by in-depth analysis are entitled to little weight. *See Peck v. Barnhart*, 214 Fed. Appx. 730, 738 (10th Cir. 2006) (holding that the ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ." (quotation omitted)); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."). Moreover, the check-mark form was created six days after the hearing in this matter, which indicates it was created for litigation purposes. Medical assessments prepared for the sole

11

purpose of a claimant's attaining disability benefits are entitled to diminished weight. *Bienemy v. Astrue*, Civ. A. No. 11-616, 2012 WL 910229 at *8 (E.D. La. Feb. 13, 2012) (holding that a form completed two days prior to hearing "raises the specter that it was prepared in anticipation of litigation and is thus entitled to diminished weight"). In any event, an ALJ may disregard a medical assessment when it is brief and conclusory. *Greenspan*, 38 F.3d at 237.

Plaintiff also maintains that the ALJ did not include all of her alleged limitations in the hypothetical question that she posed to the vocational expert, particularly the limitations on the check-mark form. However, this argument is unavailing, as the check-mark form was completed six days after the administrative hearing. (*Id.* at 560). Even so, as noted above, the ALJ determined that the medical evidence did not support the limitations annotated on the check-mark form. (*Id.* at 22). It is well-established law that an ALJ need only incorporate in a hypothetical the impairments supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Accordingly, the limitations in the ALJ's hypothetical question incorporated all of plaintiff's impairments. For these reasons, the Court finds that substantial evidence supports the ALJ's RFC determination.

### 2. Whether the ALJ erred when she failed to assign controlling weight to plaintiff's treating physician.

In the section above, this Court has already detailed the reasons why it was proper for the ALJ to assign more significant weight to Calhoun's clinical treatment notes than to the check-mark form. Substantial evidence and the case law cited above supports the ALJ's reasons for doing so. This argument lacks merit.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 16th day of September, 2014.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**