UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAULA DAVIS                                                CIVIL ACTION

VERSUS                                                     NO. 13-6059

CAROLYN COLVIN,
COMMISSIONER, SOCIAL                                       SECTION "B"(3)
SECURITY ADMINISTRATION

## ORDER AND REASONS

The Court, having reviewed *de novo* the complaint, the parties' cross motions for summary judgment, the record, the applicable law, the Magistrate Judge's Report and Recommendation, and Paula Davis's objections thereto, hereby approves and adopts the Magistrate Judge's Report as modified herein. (Rec. Docs. 1, 11, 13, 14, 15).

Accordingly, **IT IS ORDERED** that:

**(i)** Davis's Objections are **OVERRULED** and the Court **AFFIRMS AND ADOPTS** the Magistrate Judge's Report and Recommendation.

**(ii)** Davis's Motion for Summary Judgment (Rec. Doc. 11) is **DENIED** and the Commissioner's Cross Motion for Summary Judgment (Rec. Doc. 13) is **GRANTED.** And, accordingly,

**(iii)** Davis's petition for review of the final decision of the Commissioner of the Social Security Administration is **DISMISSED WITH PREJUDICE** (Rec. Doc. 1).

This case arises out of the Commissioner's denial of Davis's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Davis alleges

1

disability due to major depression, bipolar disorder, anxiety, attention deficit disorder, and ankle pain. (Rec. Doc. 14 at 1). The Commissioner denied her present application for DIB on June 8, 2011 (Rec. Doc. 9-3 at 1). Davis then requested and was granted a hearing before an Administrative Law Judge ("ALJ"), where she was assisted by counsel on March 21, 2012. (Rec. Docs. 9-2 at 16, 9-4 at 10). The ALJ found that Davis has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the non-exertional limitations that she can only: (1) perform work-related tasks in an environment free of fast-paced production requirements and routine workplace changes, with (2) no more than occasional direct interaction with the public, coworkers, and supervisors. (Rec. Doc. 9-2 at 20). Thus, the denial of Davis's DIB application was affirmed. The Appeals Council subsequently denied her request for review, and she now seeks judicial review. (Rec. Doc. 1). Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), Magistrate Judge Knowles considered the matter and recommended granting the Commissioner's Motion for Summary Judgment. (Rec. Doc. 14 at 1). Davis then filed the instant opposition, raising two objections. (Rec. Doc. 15).

In opposition to the Magistrate Judge's Report and Recommendation (the "Report and Recommendation"), Davis argues: (1) that the ALJ's evaluation of her residual functional capacity ("RFC") is not supported by substantial evidence, and (2) that the ALJ committed legal error by failing to assign

2

controlling weight to a checklist-format RFC questionnaire prepared by her treating physician, Dr. Andrew Calhoun. (Rec. Doc. 15-1 at 4, 7).

Substantial evidence is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002). Courts weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "We may not, however, reweigh the evidence or try the issues de novo." *Id.* (citing *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.* (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

The record reveals that the ALJ considered all of the medical evidence of record, which included in particular: (1) a May 24, 2011 consultative mental status examination report by James Mours, Psy.D. (Rec. Doc. 9-2 at 21-22) and (2) records of claimant's treating physician, Andrew Calhoun, M.D. Additionally, the ALJ considered Davis's own subjective

3

complaints in the form of her testimony at the hearing and the form she completed in her initial application for DIB. (Rec. Doc. 9-2 at 2-21). As well, the ALJ heard evidence concerning Davis's age, education, and work experience. (Rec. Doc. 9-2 at 23).

As to the substantial evidence issue, Davis challenges the ALJ's conclusion as to her exertional and non-exertional limitations, arguing consideration of all severe and non-severe impairments as well as all of the medical and non-medical evidence included in the record, would lead to a finding of stricter limitations. (See Rec. Doc. 15-1 at 4-6). Principally, Davis argues the ALJ failed to assign sufficient weight to: (i) her subjective relation of her impairments, (ii) an RFC produced by Dr. Calhoun less than one week before her hearing, (iii) the allegedly corroborating statements of a friend, and (iv) alleged deficiencies in the hypothetical question presented to the vocational expert who testified at Davis's hearing. (Rec. Doc. 15-1 at 6-7).

The ALJ's decision states "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC assessment." (Rec. Doc. 9-2 at 21). "Conflicts in the evidence are for the Commissioner to resolve, not the courts." *Carey v. Apfel*, 230

F.3d 131, 135 (5th Cir. 2000). The record reveals that the ALJ concluded that those items of evidence that were consistent with one another included the clinical treatment notes of Dr. Calhoun and the report/opinion of Dr. Mours. (Rec. Doc. 9-2 at 23). Dr. Calhoun's later prepared "Mental Residual Functional Capacity Questionnaire" (which indicated Davis has a marked degree of impairment in essentially all areas of functioning) was inconsistent with Dr. Calhoun's own contemporaneous treatment notes and also with the findings of Dr. Mours's report. (Rec. Doc. 23). The resolution of this conflict in evidence was within the ALJ's discretion and this Court may not second-guess that conclusion. Further, although the ALJ was required to consider all the medical and non-medical evidence in the record, nothing compels assigning equal weight to subjective non-medical and objective medical evidence. The record reflects that Davis's subjective complaints were inconsistent internally as well as with various records of Drs. Calhoun and Mours.[1] The ALJ was entitled to - and did correctly - assign less weight to Davis's own subjective complaints, whether or not they were corroborated by the further subjective relations of a friend. The record reflects consistencies between the findings of Dr. Mours's consultative examination and Dr. Calhoun's contemporaneous

---

[1] For example, at one point in time, Davis reported having psychotic events to Dr. Calhoun (which he noted had a volitional/fantasy aspect to them) (Rec. Doc. 9-8 at 9), while denying any visual or auditory hallucinations to Dr. Mours. (See Rec. Doc. 14 at 7). Further, Davis's complaint that she is unable to accomplish routine daily tasks such as personal hygiene, cleaning, and cooking are inconsistent with her statements to Dr. Mours that she can cook, shop, perform household chores, dress herself, bathe, and groom independently. (See Rec. Doc. 9-7 at 242).

treatment notes to the effect that Davis exhibited, *inter alia*, normal speech flow, orientation, judgment, and insight, as well as behavior and mood within normal limits. (See Rec. Doc. 14 at 6, 8). The Court cannot conclude that "no credible evidentiary choices or medical findings exist to support" the ALJ's decision. Additionally, the record reflects that the inconsistent RFC questionnaire completed by Dr. Calhoun was prepared six days before Davis's hearing, supporting an inference that it was prepared in contemplation of litigation, and that the ALJ was therefore entitled to assign it diminished weight. *See Bienemy v. Astrue*, 2012 WL 910229 at *8 (E.D. La. 2012)(form completed two days priror to hearing "raises the specter that it was prepared in anticipation of litigation and is thus entitled to diminished weight."); *accord Harrell v. Bowen*, 862 F.2d 471, 482 (5th Cir. 1988). Further, the ALJ went beyond what was required by affording Davis the benefit of the doubt by finding the non-exertional limitations noted above. The substantial evidence supports the ALJ's decision and Davis is not entitled to reversal on this issue.

As to Davis's claims that the ALJ erred by failing to assign controlling weight to Dr. Calhoun's late-prepared RFC, "[t]he weight that a medical opinion receives depends on numerous considerations and careful analysis of all the evidence." POMS DI 24515.003(A)(1)(a). A treating source's medical opinion regarding the nature and severity of the claimant's opinion may be given controlling weight if it is (a)

6

well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (b) not inconsistent with other substantial medical or nonmedical evidence in the record. POMS DI 24515.003(A)(2). A treating source medical opinion which is well-supported by medical evidence may nevertheless be contradicted, and even outweighed by substantial nonmedical evidence. POMS DI 24515.003(B)(2).

The record reflects that the ALJ concluded that the lack of elaboration or explanation as to the ratings contained on the checklist-format RFC questionnaire prepared by Dr. Calhoun, as well as his inscription at the top of that form: "For Current Employment Only," detracted from its credibility. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)(ALJ may disregard statements that are brief and conclusory). Further, the ALJ found "Dr. Calhoun's indication of such extreme limitations [in the RFC] is inconsistent with *both* the report and opinion of the consultative psychologist, *and* with the findings, observations and opinions set forth in Dr. Calhoun's *own* clinical treatment notes." (Rec. Doc. 9-2 at 23). For these reasons, the ALJ refused to assign controlling weight to Dr. Calhoun's opinion contained in that 2012 questionnaire. This decision was not in error and Davis has failed to show otherwise.

In summary, the ALJ's conclusions are supported by substantial evidence in the record and Davis's objections are without merit. Accordingly, it is **ORDERED** that Davis's

7

Objections are **OVERRULED,** the court **AFFIRMS AND ADOPTS** the Magistrate Judge's Report and Recommendation**,** Davis's Motion for Summary Judgment (Rec. Doc. 12) is **DENIED**, the Commissioner's Motion for Summary Judgment (Rec. Doc. 13) is **GRANTED,** and Davis's petition is **DISMISSED WITH PREJUDICE** (Rec. Doc. 1).

New Orleans, Louisiana, this 18th day of December, 2014.

_____
UNITED STATES DISTRICT JUDGE